IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| WINDWOOD HEIGHTS, INC. ) | CASE NO. 07-1001 |
| ) | |
| Debtor. ) | |

## MEMORANDUM OPINION

Modular Structures of PA, Inc. ("MSI"), a judgment creditor, seeks relief from the automatic of the Bankruptcy Code pursuant to 11 U.S.C. § 363(d)(3) against single asset real estate held by Windwood Heights, Inc. (the "Debtor"). The Debtor opposes the motion on the basis that judgment creditors are not eligible to utilize § 363(d)(3) to lift the automatic stay, and, alternatively, that it has proposed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time.

The court held a hearing on MSI's motion in Clarksburg, West Virginia on January 25, 2008, at which time the court ordered supplemental briefing. That briefing is now complete, and for the reasons stated herein, the court will deny MSI's motion without prejudice, and allow the Debtor 30 days to file an amended disclosure statement and plan of reorganization.

### I. BACKGROUND

In June 2005, the Debtor purchased an 11.84 acre tract of land in Canaan Valley, West Virginia (the "Property") for $375,000. The Debtor plans to construct a housing development on the Property that consists of 25 buildings, each consisting of living two units. Water, sewer, telephone, gas and electric lines are in place for all the contemplated units.

In the late summer of 2005, the Debtor purchased three of the two-unit buildings from MSI. The

1

building materials were delivered to the Debtor's property, and the Debtor has completed the construction of one of the six units; two more can be completed for about $90,000. The Debtor's asking price for each unit is around $225,000.

When the Debtor failed to pay MSI for its buildings, MSI recorded a mechanic's lien, and on September 28, 2006, it obtained a judgment against the Debtor for $438,109, plus pre- and post-judgment interest. According to its September 4, 2007 proof of claim, MSI is owed $482,548.50, and it claims to have a first lien position against the Property.

Pursuant to its judgment, MSI noticed a foreclosure sale for the Property on June 1, 2007, but on May 31, 2007, the Debtor filed its Chapter 11 case in the State of New Jersey, which was subsequently transferred to this District. On Schedule A, the Debtor claims the Property to be worth $1,541,000 based on an July 6, 2007 appraisal. For the purpose of MSI's stay relief motion, it has accepted this valuation. If completed, the Debtor estimates the development would be worth $10,585,000. The total amount of scheduled and filed claims against the Debtor's bankruptcy estate is approximately $974,695.42.[1]

On September 12, 2007, MSI filed its motion for relief from the automatic stay of the Bankruptcy Code on the basis that the Debtor has no income, and it is not making any adequate protection payments to MSI. On October 1, 2007, the Debtor filed its motion to employ a realtor to begin selling the units. MSI objects to that motion on the grounds that the Debtor's realtor, pre-petition, had been unable to locate any purchasers over several months, and hiring a realtor pending resolution of its lift stay motion was premature. On November 7, 2007, this court entered an order declaring the Debtor's case to be "single asset real estate," as defined by 11 U.S.C. § 101(51B).

On January 11, 2008, the Debtor filed its disclosure statement and proposed plan of reorganization. In its disclosure statement, the Debtor summarized the concept of its proposed plan:

> The Plan proposes to use the equity cushion to provide adequate protection to the creditors in existence at confirmation, while a solution to the temporary insolvency situation is finalized. The Plan proposes to allow management sufficient flexibility to continue to

---

[1] In its disclosure statement, the Debtor stated that the total debt against the estate was about $807,000. Apparently, the Debtor failed to take into account the proofs of claim filed in the case, and an amendment to Schedule F to list a $55,000 loan to Branco Rovcanin.

2

> work on refinancing all debt, refinancing part of the debt, selling the development as a whole, selling units in the development, or issuing additional shares to investors, so long as the ratio of debt to appraised value does not exceed certain ratios of debt to equity. In the event of any of the ratios in the Plan are exceeded, then a sale of the development will be undertaken.

(Document No. 91, p.8).

Three different debt to equity ratios are set forth in the Debtor's proposed plan. The first is when the debt owed to MSI reaches 50% of the appraised value of the property. The second is when the debt owed to MSI, and a debt owed to George Franovic (scheduled at $287,000), reaches 70% of the appraised value of the property. The third is when all debts against the estate reach 80% of the appraised value of the property. Unsecured claims are to receive interest on their claims during the hiatus period. In the event the debt to equity ratios set forth are reached, then the sole remedy of the creditors of the estate is to seek to have the real property auctioned by the Debtor's auctioneer.

## II. DISCUSSION

MSI argues that under the single asset real estate provisions of 11 U.S.C. § 362(d)(3), it is entitled to relief from the automatic stay to execute on its judgment lien on the basis that the Debtor does not propose to make periodic payments to it, and the Debtor has failed to file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time. On the other hand, the Debtor argues that MSI, as a judgment creditor, is not entitled to seek relief under § 362(d)(3), and even if it was, the negative amortization plan proposed by the Debtor is capable of being confirmed considering the substantial equity in the Debtor's property.

### A.   Judgment Creditors and § 362(d)(3)

The Debtor contends that the purpose of the single asset real estate provisions of § 362(d)(3) is to address perceived abuses between borrowers and lenders in consensual transactions. Because MSI is a judgment lien holder – not a consensual mortgagee or deed of trust creditor – with respect to the Property, the Debtor asserts that Congress's intention will not be fulfilled by allowing MSI to utilize § 362(d)(3).

Consonant with the Debtor's views, *Collier on Bankruptcy* reports that "[t]he purpose of section 362(d)(3) is to address perceived abuses in single asset real estate cases, in which debtors have attempted

3

to delay mortgage foreclosures even when there is little chance that they can reorganize successfully." 3 *Collier on Bankruptcy*, ¶ 362.07[5][b] (Alan N. Resnik & Henry J. Sommer, eds. 15th ed. rev. 2008) (citing S. Rep. No. 168, 103d Cong., 1st Sess. (1993) ("This amendment will ensure that the automatic stay provision is not abused, while giving the debtor an opportunity to create a workable plan of reorganization."); 140 Cong. Rec. 10764 (daily ed. October 4, 1994) (statements of Rep. Brooks, chairperson of the House Judiciary Committee) ("Without bankruptcy reform, companies, creditors, and debtors alike will continue to be placed on endless hold until their rights and obligations are adjudicated under the present system – and that slows down new ventures, new extensions of credit and new investments.")). Textually, certain subsections of § 362(d)(3) do distinguish between consensual lenders and judicial or statutory lien holders:

> (d) . . . the court shall grant relief from the stay . . .
>
> . . .
>
> (3) with respect to a stay of an act against single asset real estate . . . by a creditor whose claim is secured by an interest in such real estate, unless . . .
>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or
>> (B) the debtor has commenced monthly payments that--
>>> (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2) be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (*other than a claim secured by a judgment lien or by an unmatured statutory lien*); and
>>> (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate.

*Id.* (emphasis added).

According to the Debtor, § 362(d)(3)(B)(i-ii) demonstrate that periodic payments in the form of rents or other property-generated income need not be distributed to judgment creditors, and that allowing payments based on nondefault contract rates of interest would not apply in the context of MSI's judgment lien inasmuch as MSI is entitled to a judgment rate of interest.

The plain language of § 362(d)(3), however, is contrary to the Debtor's argument. Subsections

4

(B)(i-ii), on which the Debtor's textual argument is based, is simply one of two alternatives by which a debtor may ward off a stay relief attempt by a secured creditor. Thus, even if the Debtor's interpretation of subsection (B)(i-ii) is correct, there is no language in subsection (d)(3), or in the alternative stated in subsection (d)(3)(A), that would limit the statute's applicability so as to exclude judgment lien creditors. Merely because one of two alternatives available to a debtor to thwart a stay relief motion may not available against a judicial or statutory lien creditor does not mean that a judicial or statutory lien creditor is not able to take advantage of the single asset stay relief allowance under § 362(d)(3). Indeed, the case law indicates that non-consensual lien creditors have obtained relief under § 362(d)(3). *E.g.*, *In re 652 West 160th, LLC*, 330 B.R. 455, 462 (Bankr. S.D.N.Y. 2005) (rejecting the argument that § 362(d)(3) only benefits consensual secured creditors; "[t]he words of the statute are to the contrary."); *In re Syed*, 238 B.R. 133, 136 (Bankr. N.D. Ill. 1999) (granting the City of Chicago, a judgment lien creditor, relief from the automatic stay under § 362(d)(3)). Similarly, although the statements in the legislative history to 11 U.S.C. § 362(d)(3) seem to be concerned with a consensual lending relationship, the court is not aware of anything in the statute's legislative history that would prohibit non-consensual lien creditors from utilizing its provisions.

**B.      Reasonable Possibility of Being Confirmed Within a Reasonable Time**

The basis for MSI's stay relief motion is § 362(d)(3)(A), which directs the court to grant relief if the court finds that the Debtor has filed a plan of reorganization that does not have a reasonable possibility of being confirmed within a reasonable time. The parties dispute exactly what the applicable standard is for making this determination. MSI argues that the court must look to the plan of reorganization currently filed by the Debtor. The Debtor argues that the court has discretion to look beyond the filed plan, which is only an outline of the Debtor's possible courses of action, to a modified plan that would ultimately be set for confirmation.

Beyond arguing over the applicable standard, MSI argues that the plan proposed by the Debtor is not fair and equitable, not feasible, and impermissibly seeks to cramdown its security interest by enjoining it from taking any action to foreclose on its collateral for up to eight years. On the other hand, the Debtor contends that the equity cushion in the Property is so large that all of MSI's arguments should be rejected.

**1.      Applicable Standard Under § 362(d)(3)(A)**

Section 362(d)(3) of the Bankruptcy Code was added by § 218(b) of the Bankruptcy Reform Act of 1994, and the requirement in subsection (A), allowing the debtor to defeat a stay relief motion if the debtor has filed a plan that has "a reasonable possibility of being confirmed within a reasonable period of time" is nearly identical to the standard set forth six years earlier by the United States Supreme Court in *United Savings Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365 (1988). In that case, the Court addressed the stay relief standards under 11 U.S.C. § 362(d)(2), which allows relief in the event that no equity in the property exists, and if the property is "not necessary to an effective reorganization." As the Court stated in *Timbers*, to defeat a stay relief motion by showing that the subject property was "necessary to an effective reorganization," the debtor had to demonstrate that there "must be 'a reasonable possibility of a successful reorganization within a reasonable time.'" *Timbers*, 484 U.S. at 376 (citation omitted). Thus, the standard for interpreting § 362(d)(3)(A) is nearly identical to the standard for determining whether or not property is "necessary for an effective reorganization" in § 362(d)(2)(B). *See, e.g.*, *In re Deep River Warehouse, Inc.*, No. 04-52749, 2005 Bankr. LEXIS 1090 at * 39-40 (Bankr. M.D.N.C. March 14, 2005) (noting the similarity in the standards of §§ 362(d)(2)(B) and 362(d)(3)(A)).

Importantly, adjudicating a relief from stay motion under § 362(d)(3)(A) is not to be a mini confirmation hearing. *E.g.*, *In re LDN Corp.*, 191 B.R. 320, 325 (Bankr. E.D. Va. 1996) ("In the context of relief from stay litigation, the analysis of the potential for a successful reorganization is not the same as the standard employed at a confirmation hearing."). At a confirmation hearing, a debtor must prove its entitlement to confirm a plan under 11 U.S.C. § 1129 by a preponderance of the evidence, and concerning the plan feasibility requirement of § 1129(a)(11) in particular, the debtor must demonstrate that the confirmation of the plan is not "likely" to be filed by liquidation or the need for further financial reorganization. *E.g.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988) (stating that success need not be guaranteed – the possibility that a plan may fail is not fatal – but a plan must be supported by adequate evidence that some reasonable assurance of success exists); *In re Featherworks Corp.*, 25 B.R. 634, 642 (Bankr. S.D.N.Y. 1982) ("As the proponent of the plan, the debtor had the burden of establishing that it met the requirements of the Code."), *aff'd* 36 B.R. 460 (E.D.N.Y. 1984). By comparison, the showing required by a debtor under § 362(d)(3)(A) is only that the plan have a

6

reasonable possibility of being confirmed, which is a lesser showing than that required at confirmation. *E.g.*, *In re Kent Terminal Corp.*, 166 B.R. 555, 560 (Bankr. S.D.N.Y. 1994) (analyzing a case under § 362(d)(2)(B) and concluding that "[i]n a run of the mill relief from stay motion, a debtor need not satisfy the higher level of scrutiny imposed at a confirmation hearing. . . . [A]t confirmation . . . . most courts require that a plan offer a probability of success, rather than a mere possibility."). The terms of § 362(d)(3)(A) have been characterized as "rather vague and hopeful." *In re Hope Plantation Group, LLC*, No. 07-1171, 2007 Bankr. LEXIS 2381 at *12 (Bankr. D.S.C. June 14, 2007) ("[T]he terms . . . 'reasonable possibility' within a 'reasonable time' are rather vague and hopeful terms that require a far lower standard of proof that will be required of the Debtor [at the confirmation hearing].").

In proving a "reasonable possibility" of plan confirmation, the stage of the proceeding assists in the showing a debtor must make: "'At a minimum the debtor must show that (1) it is proceeding to propose a plan of reorganization, (2) the proposed or contemplated plan has a realistic chance of being confirmed and (3) the proposed or contemplated plan is not patently unconfirmable.'" *In re National/Northway Ltd. P'ship*, 279 B.R. 17, 24 (Bankr. D. Mass. 2002) (citations omitted). The court is not aware of any requirement, and will not impose one, that the plan filed at the time the stay relief motion is pending is the only benchmark for determining whether or not stay relief is appropriate; rather, all that is required is that an effective reorganization be "in prospect," *Timbers*, 484 U.S. at 376, and be attainable within a reasonable period of time.

### 2.     The Debtor's Plan

The Debtor contends that it has satisfied the requirements of 11 U.S.C. § 363(d)(3)(A) on the basis that it has filed a proposed plan of reorganization, it pays 100% of all claims, it is not otherwise unconfirmable, and, therefore, it has a realistic chance of being confirmed. The central premise of the Debtor's plan is to allow the Property's equity cushion to be diminished while the Debtor attempts to obtain third party sales, refinancing, and/or recapitalization. The agreed value of the Property – for purposes of the stay relief motion only – is $1,541,000, and the total amount of debt against the Debtor's estate is estimated to be $974,695.42, leaving an equity cushion of about $566,304.58.

On the other hand, MSI asserts that the Debtor's plan is patently unconfirmable on two overlapping grounds: the proposed plan is not feasible under 11 U.S.C. § 1129(a)(11), and in light of MSI's anticipated

7

objection to confirmation, the plan is not fair and equitable under § 1129(b)(2). MSI's arguments center around the fact that the Debtor currently has no income, and is relying on a negative amortization that could last as long as eight years while it waits for a funding mechanism to complete its housing project.

The Debtor replies that it has had an inadequate amount of time to market the property (indeed, MSI opposes the Debtor hiring a realtor), and, moving forward, its proposed plan needs to be flexible enough to accommodate post-petition financing, post-petition unit sales, post-petition bulk sales, refinancing, and/or recapitalization. In the Debtor's view, it is unrealistic to expect the Debtor to pigeon-hole itself into a course of action without an adequate breathing spell to explore different exit strategies. Moreover, the Debtor argues, neither MSI nor any other creditor should be heard to complain about some delay in payment considering that any plan must pay 100% of all claims.

Section 1129(b)(2)(A)(i)(II) of the Bankruptcy Code provides that a plan is "fair and equitable" to a dissenting class of secured creditors if the plan provides:

> (i) (I) that the holders of such claims retain the liens securing such claims, whether the property is subject to such liens is retained by the debtor or transferred to another entity, to the extent if the allowed amount of such claim; and
> 
> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
> 
> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagprah; or
> 
> (iii) for the realization by such holders of the indubitable equivalent of such claims.

§ 1129(b)(2)(A)(i-iii).

When a plan calls for "negative amortization" the plan is providing that interest payments on an existing debt be added to the principal, and paid at a time when the debtor enjoys greater income or sells the collateral. *See, e.g.*, Hon. Barry S. Schermer & Keith W. Bartz, *Negative Amortization and Plan Confirmation: Is it Fair and Equitable Under Section 1129(b) of the Bankruptcy Code?* 8 Bankr. Dev. J. 1, 2 (1991). Thus, the heart of negative amortization is that the deferral in payment of some portion of present value (whether principal and/or interest) actually causes debt to increase at first rather than

decrease as would normally happen. Generally, for a negative amortization plan to be fair and equitable, "the stream of payments from the negatively amortized debt [must] equal[] the present value of the secured claim as of the plan's effective date." *Id.* at 5.

Several tests have been developed to assist a bankruptcy court in the determination of whether a negative amortization plan is "fair and equitable." For example, the Court of Appeals for the Ninth Circuit agreed with the application of ten relevant factors:

> 1. Does the plan offer a market rate of interest and present value of the deferred payments;
> 2. Is the amount and length of the proposed deferral reasonable;
> 3. Is the ratio of debt to value satisfactory throughout the plan;
> 4. Are the debtor's financial projections reasonable and sufficiently proven, or is the plan feasible;
> 5. What is the nature of the collateral, and is the value of the collateral appreciating, depreciating, or stable;
> 6. Are the risks unduly shifted to the creditor;
> 7. Are the risks borne by one secured creditor or class of secured [**13] creditors;
> 8. Does the plan preclude the secured creditor's foreclosure;
> 9. Did the original loan terms provide for negative amortization; and
> 10. Are there adequate safeguards to protect the secured creditor against plan failure.

*Great Western Bank v. Sierra Woods Group*, 953 F.2d 1174, 1178 (9th Cir. 1992) (quoting *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 398 (Bankr. W.D. Tenn. 1991)); *see also In re Consolidated Properties Ltd. P'Ship.*, 170 B.R. 93, 99 (Bankr. D. Md. 1994) ("Only where it is clear that a negative amortization plan does not unduly shift the risk of loss to the creditor should the court find that it is fair and equitable.").

In analyzing cases that found negative amortization plans to be fair and equitable, Judge Schermer noted that: "1. the period of post-confirmation interest deferral remained relatively short, 2. the ratio of debt to value of collateral was small, 3. the value of the collateral was expected to remain relatively steady, and/or 4. the original agreement between the parties provided for negative amortization over the life of the loan." 8 Bankr. Dev. J. at 9. In contrast, Judge Schermer noted that courts have generally found negative amortization plans not to be fair and equitable when: "1. there were inadequate safeguards against the plan's failure, 2. the length of interest deferral was excessive, 3. the plan barred the creditor's foreclosure rights, 4. the interest rate provided in the plan was inadequate, and/or 5. the plan was not feasible." *Id.*

Whether or not a plan is "fair and equitable" is a case by case, factual determination. *Sierra Woods Group*, 953 F.2d at 1176.

In analyzing the factors stated in *Sierra Woods Group*, the court notes that: (1) the plan does not offer to make any interim payments to MSI; (2) payment on any portion of MSI secured claim is being deferred for up to a period of eight years, i.e., there are to be no payments of principal *or* interest, which is accruing at a post-judgment rate of 10%; (3) MSI's debt of about $482,540 is only about 31% of the Property's $1,541,000 value; (4) the Debtor has no current income, and the entire plan centers around a sale, refinancing, or recapitalization; (5) the nature of the collateral is semi-developed, vacation home real property; (6) MSI, a judgment creditor and not a traditional lender, bears the risk of failure and, in effect, is being forced to finance the Debtor's operations; (7) MSI believes that it is the first priority secured creditor in this case; (8) the plan precludes MSI from exercising its foreclosure rights, and should a debt to equity ratio be breached, MSI must allow the property to be auctioned by the Debtor's auctioneer; (9) no loan terms exist between the parties, and (10) the only safeguard against plan failure for MSI is if a certain debt to equity ratio is breached, in which event the Debtor agrees to auction the property.

As proposed, the court finds that the Debtor's negative amortization plan is patently unconfirmable based on the possibility of an eight-year negative amortization schedule. This is not to say that a negative amortization plan cannot be confirmed; rather, a plan that forces an objecting creditor to finance a debtor's operations for up to eight years by forestalling collection on its lien is simply not fair and equitable. *E.g.*, *In re D & F Constr., Inc.*, 865 F.2d 673, 675-76 (5th Cir. 1989) (vacating a confirmation order that provided a 12 to 15-year negative amortization period; creditor was in a worse financial condition as a result of confirmation); *In re Wood*, No. 89-111, 1991 U.S. Dist. LEXIS 20083 at *16-19 (E.D. Va. Nov. 11, 1991) (affirming the confirmation of a plan that provided a four-year period of negative amortization, based, in part, on the fact that there was equity in the property and the property was located in a "strong growth corridor"); *In re Deluca*, No. 95-11924, 1996 Bankr. LEXIS 1950 at *45 (Bankr. E.D. Va. April 15, 1996) (noting that the court would approve a plan that called for two months of negative amortization on the basis that "the very limited deferral of interest proposed [did not place] an undue risk [on the secured creditor]."). Given the substantial equity cushion in this case, it is not out of the realm of possibility that the court could approve of a negative amortization plan of reorganization provided that, at

the very least, the Debtor outlines a more accelerated timetable for allowing MSI to realize the value of its secured position. In the context of this case, eight years is simply unacceptable. If the Debtor is going to prohibit MSI from collecting on its judgment lien, the Debtor must inform MSI of exactly how long it must wait, and, at confirmation, the court can evaluate whether the time-lines proposed by the Debtor are fair and equitable based on the facts of this case. In formulating an amended plan, the court expects to see a firm outline of the Debtor's business plan – something more than the rather vague and hopeful future that the Debtor has expressed in the context of this stay relief motion. Indeed, the term "negative amortization" in the context of the Debtor's proposed plan is somewhat of a misnomer inasmuch the term "amortization" denotes an act of gradually extinguishing a debt through periodic payments of principal and interest. *Black's Law Dictionary* 93 (8th ed. rev. 2004). Here, the Debtor has not proposed any schedule of payments to MSI.

### III. CONCLUSION

Accordingly, the court does not believe that the plan currently proposed by the Debtor can be confirmed. However, this is a relief from stay motion – not a confirmation hearing. Based on the facts of this case, most particularly the substantial equity cushion enjoyed by MSI, the court believes that the Debtor can propose a plan that has a reasonable possibility of being confirmed within a reasonable time. The court will therefore give the Debtor 30 days to file an amended disclosure statement and plan, allow the hiring of a realtor, reset the disclosure statement and confirmation hearings, and will deny MSI's motion for relief from the automatic stay without prejudice to refiling.